# 2001 DTA 104

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL II - BAYAMON**

R&G MORTGAGE CORPORATION
Apelante

v.

RAFAEL ENRIQUE NEGRON MEDINA
Apelado

Núm. KLAN-00-00668

RECEIVED

AUG 2 2 2001

SERIALS DEP'T
HARVARD LAW SCHOOL LIBRARY

San Juan, Puerto Rico, a 24 de enero de 2001

Panel integrado por su Presidente, Juez Gierbolini,
y los Jueces Hernández Torres y Pabón Charneco

Hernández Torres, Juez Ponente

En el presente recurso, el apelante solicita que revisemos la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, en el Caso Civil Número DCD1999-1908, el 13 de abril de 2000, cuya copia de la notificación fue archivada en autos el 17 de mayo de ese mismo año.

Por los fundamentos que expresamos a continuación, REVOCAMOS la Sentencia apelada.

## I

El 1ro. de julio de 1999, R&G Mortgage Corporation (R&G) presentó una demanda sobre ejecución de hipoteca por la vía ordinaria contra Rafael Enrique Negrón Medina (Negrón) en el tribunal de instancia. En dicha demanda, R&G alegó, entre otras cosas, que Negrón constituyó una hipoteca sobre un inmueble de su propiedad para garantizar el pago de un pagaré hipotecario suscrito el 27 de abril de 1998. La propiedad en controversia es el Apartamento C-3, Edificio C, del Condominio Lakeside Villas, Barrio Sabana, Vega Alta.

R&G alegó, además, que es tenedora de buena fe del pagaré que evidencia la deuda y que Negrón se había atrasado en el pago de lo adeudado desde diciembre de 1998. Dicha institución financiera indica que desde esa fecha Negrón no efectúa pago alguno, a pesar de los avisos y oportunidades que se le concedieron para actualizar su préstamo. Ante estas circunstancias, R&G declaró vencida la totalidad de lo adeudado, sus intereses y otras cantidades que Negrón se obligó a pagar en virtud de lo acordado entre las partes. R&G solicitó al tribunal de instancia que emitiera sentencia y ordenara el pago de lo adeudado, en pública subasta de la propiedad

Negrón, por su parte, a pesar de haber sido debidamente emplazado, no contestó la demanda. El tribunal de instancia, a su vez, emitió una orden el 11 de agosto de 1999, en que ordenó a R&G que acreditara los datos registrales de la hipoteca cuya ejecución se solicitaba. Dicha orden fue notificada el 10 de septiembre de 1999.

El 16 de septiembre de 1999, R&G presentó una "*Moción Solicitando Reconsideración de Orden*". En la misma alegó que el presentar una demanda para la ejecución de una hipoteca no inscrita, no conlleva la desestimación de la misma, dada la naturaleza mixta de la acción.

El 4 de octubre de 1999, el tribunal de instancia emitió una orden concediendo a R&G diez (10) días para someter una demanda enmendada en cobro de dinero que obviara cualquier remedio relacionado a la ejecución de sentencia por vía de ejecución de hipoteca, so pena de que le desestimaran la acción sin perjuicio.

No obstante, el 28 de diciembre de 1999, R&G presentó una "*Segunda Moción sobre Reconsideración*". En la misma alegó que resultaba innecesaria la presentación de una demanda enmendada a la luz del derecho aplicable y la jurisprudencia interpretativa del mismo.

Posteriormente, el 13 de abril de 2000, el tribunal de instancia emitió sentencia desestimando la demanda sin perjuicio. El tribunal señaló que R&G no había cumplido con su orden del 4 de octubre de 1999. Inconforme con esta determinación, R&G presentó ante nos, el 9 de junio de 2000, el recurso de epígrafe. En éste alega que erró el tribunal de instancia al desestimar la demanda por no estar inscrita aún en el Registro de la Propiedad la hipoteca que se pretende ejecutar, sino presentada para inscripción y pendiente de calificación y despacho.

Luego de examinar la totalidad del recurso ante nuestra consideración, estamos en posición de resolver. Veamos.

## II

En nuestro derecho, la hipoteca es de carácter constitutivo. Ello implica que, para que la garantía real de la hipoteca quede válidamente constituida, es indispensable que el derecho se inscriba en el Registro de la Propiedad. *Rosario Pérez v. Registrador*, 115 D.P.R. 491, 493 (1984); *S.J. Credit, Inc. v. Ramírez*, 113 D.P.R. 181, 188-189 (1982). Este principio está contenido en el Artículo 188 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2607, el cual dispone lo siguiente:

*"§2607. -Requisitos para su constitución para que las hipotecas voluntarias queden válidamente constituidas se requiere:*

*Primero: Que se hayan acordado en escritura pública.*

*Segundo: Que la escritura se haya inscrito en el Registro de la Propiedad."* (Enfasis nuestro.)

El proceso de inscripción comienza con el asiento de presentación. Este asiento es uno preparatorio y preliminar que guarda relación con el asiento principal al que se dirige. Según nos señala el tratadista José Luis Lacruz Berdejo, el asiento de presentación sólo tendrá validez, como tal, si finalmente éste se inscribe. Lacruz Berdejo, *Derecho Inmobiliario Registral*, Barcelona, 1968, pág. 157.

Una vez es presentado el documento para su inscripción, el Registrador de la Propiedad aplica su función calificadora. Dicha función, nos señala nuestro Tribunal Supremo, tiene la naturaleza propia de los actos de jurisdicción voluntaria. *L. Dershowits & Co., Inc. v. Registrador*, 105 D.P.R. 267, 273 (1976). Esta función, nos aclara el Tribunal, es una trascendente sin la cual no podría cumplirse el principio de legalidad que gobierna el sistema inmobiliario registral. *Id.* A su vez, el Registrador, al ejercitarla, garantiza que se cumpla con el propósito de que el Registro sólo encierre actos válidos y derechos perfectos. *Id.*

La calificación que hace el Registrador, a su vez, es una actuación obligatoria y personalísima. Este califica bajo su completa responsabilidad. Lacruz Berdejo, *supra*, a la pág. 354. Por tanto, un derecho que se presenta para ser inscrito puede adolecer de faltas que eviten su posterior inscripción. Presentado y verificado el asiento de presentación, el Registrador realiza un juicio crítico de naturaleza jurídica que produce una resolución. Esta resolución puede ser la práctica, denegación o suspensión del asiento solicitado. En vista de lo anterior, queda establecido que el asiento de presentación no es más que una etapa dentro del proceso registral.

La doctrina prevaleciente reconoce la teoría de que la inscripción en el Registro de la Propiedad es declarativa, excepto en el caso de la hipoteca. Como bien señala nuestro más alto foro: *"[e]n el caso de la hipoteca, su inscripción es, pues, el acto constitutivo mediante el cual la garantía produce efectos reales y adviene eficaz erga omnes al ámbito de los derechos reales". Rosario Pérez v. Registrador, supra*, pág. 494. Es por ello que la garantía de un crédito personal no se constituye en garantía real -hipoteca-, hasta que es inscrita en el Registro. *Id.*, a la pág. 493.

Sobre el particular, Puig Brutau añade lo siguiente:

*"El carácter constitutivo de la inscripción de la hipoteca responde a la verdadera razón de ser de este derecho. Como dice el art. 131 LH, al regular el procedimiento para ejercitar la acción real, "si no pudiese presentarse el título inscrito, deberá acompañarse con el que se presente certificación del Registro que acredite la inscripción y subsistencia de la hipoteca". Por tanto, la inscripción es indispensable para ejercitar el derecho frente a terceros, por lo que forma parte integrante del negocio jurídico creador de este derecho real, cuya razón de ser es la posibilidad de ejercitarlo frente a quien sea adquirente de la finca hipotecada, sin necesidad de que se convierta al mismo tiempo en deudor personal de la obligación garantizada."* José Puig Brutau, *Fundamentos de Derecho Civil*, Tomo III, Vol. III, 3ra. ed., 1983, pág. 120.

## III

En el caso de autos, la hipoteca que R&G solicita ejecutar no ha sido inscrita aún en el Registro de la Propiedad. Esta si fue presentada para inscripción. Sin embargo, como mencionamos anteriormente, el asiento de presentación es sólo un paso dentro del procedimiento registral. En vista de que la hipoteca todavía no ha sido inscrita, la misma carece de la naturaleza *erga omnes* que la convierte en un derecho real oponible a terceros. Si reconociéramos tal naturaleza desde el momento del asiento de la presentación, correríamos el riesgo de que, posteriormente, el Registrador, en su función calificadora, denegara la inscripción de la hipoteca.

Lo expuesto anteriormente no significa que R&G carezca de derechos antes de la inscripción de la hipoteca que se constituyó a su favor. La escritura presentada en el Registro contiene un negocio privado entre sus otorgantes, R&G y Negrón, cuya validez intrínseca no sería afectada, aun en el supuesto de que se deniegue su inscripción por defectos formales en la escritura. Como bien señala nuestro Código Civil, *"[l]os documentos públicos hacen prueba, aun contra tercero, del hecho que motiva su otorgamiento y de la fecha de éste"*. Art. 1177 del Código Civil, 31 L.P.R.A. sec. 3273. Es necesario que tengamos presente la importante distinción referente a la validez del negocio jurídico como tal, frente a la validez del instrumento público donde se recoge dicho negocio: la escritura. *Sucn. Santos v. Registrador*, 108 D.P.R. 831, 838 (1979).

Por otro lado, nuestro Tribunal Supremo, en *First Federal Savings Bank v. Nazario González*, 138 D.P.R. 872, 879-881 (1995), manifestó lo siguiente, al respecto:

*"La acción de ejecución de hipoteca por la vía ordinaria es de naturaleza mixta; a saber, la personal y la real. C.R.U.V. v. Torres Pérez, 111 D.P.R. 698, 699 (1981). El acreedor puede optar por tratar de obtener la satisfacción de la sentencia que sea dictada en reconocimiento de su crédito mediante requerimiento personal al deudor o mediante la ejecución de la garantía hipotecaria. P.R. Production Credit Association v. Registrador, 123 D.P.R. 231. Por tanto, cuando el deudor y el propietario del bien hipotecado es la misma persona, la acción personal está inmersa en la acción real de ejecución de hipoteca por la vía ordinaria, por lo que las mismas no son "mutuamente excluyentes". P.R. Production Credit Association v. Registrador, supra, a la pág. 246. En tal caso, el reclamante tendrá derecho a un sólo remedio, el pago de lo adeudado. El hecho de que dicha reclamación pueda hacerse efectiva mediante el pago personal de la deuda o mediante la ejecución de la hipoteca, no significa que la demanda presentada para ello contenga múltiples reclamaciones. El banco demandante en este caso no tiene un derecho a un remedio adicional e independiente de su derecho a obtener el pago de la deuda reclamada. Nos enfrentamos en realidad a un mismo remedio: la condena al pago del crédito reclamado.*

*En resumen, a pesar de las marcadas diferencias entre la acción personal y la acción real, las mismas "aparecen, por lo general, confundidas cuando coincide el propietario de la finca hipotecada y el deudor personal...". Roca Sastre, Derecho Hipotecario, 7ma. ed. Tomo IV, 2 Bosh, Barcelona, pág. 1036; P.R. Production Credit Association v. Registrador, supra.*

*El caso de autos se circunscribe a esta última situación. Los esposos recurridos son propietarios de la finca hipotecada y deudores personales a la misma vez. Por consiguiente, ambas acciones, es decir la real y la personal, quedaron confundidas dentro de la acción hipotecaria ordinaria. Esta acción, la cual consideramos como una acción mixta, representa para efecto de la Regla 43.5 [de Procedimiento Civil] una sola reclamación."* (Enfasis en el original; notas al calce omitidas.)

En el caso de autos, Negrón es propietario del apartamento objeto de la acción legal que nos ocupa y, a su vez, deudor personal de R&G. Por tanto, según la jurisprudencia antes citada, ambas acciones, la real y la personal, quedaron confundidas en la acción hipotecaria ordinaria. La reclamación de R&G para el pago de la deuda asumida por Negrón subsiste, aunque no pueda ejecutarse la garantía hipotecaria en esta etapa. Por lo tanto, R&G puede en estos momentos instar una reclamación de cobro de una obligación personal.

## IV

Por los fundamentos antes expuestos, REVOCAMOS la sentencia apelada y devolvemos el caso al Tribunal de Instancia para que se realice vista en su fondo sobre la deuda personal de los deudores.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General